UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RHONDA D. CALLAWAY,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Civil Action No. 15-308 (JDB-GMH) |

## MEMORANDUM OPINION

Plaintiff Rhonda Callaway challenges the denial of her claim for Social Security Disability Insurance Benefits. On April 29, 2016, Magistrate Judge G. Michael Harvey, to whom this matter had been referred for full case management, issued his Report and Recommendation. Judge Harvey recommended that the decision of the Administrative Law Judge ("ALJ") be affirmed. Thereafter, Callaway filed timely Objections to the Report and Recommendation pursuant to Local Civil Rule 72.3(b), and defendant, the Acting Commissioner of Social Security, filed a response. For the reasons set forth in the Report and Recommendation and those explained further below, the Court finds that the ALJ properly denied Callaway's claim. The Court accordingly adopts the Report and Recommendation, denies plaintiff's motion for judgment of reversal, and grants defendant's motion for judgment of affirmance.

### I.    BACKGROUND

**A. Statutory and Regulatory Framework**

To qualify for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), a claimant must establish that she is "disabled." 42 U.S.C. § 423. Under the Act, disability means the "inability to engage in any substantial gainful activity by reason of any medically

1

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). With certain exceptions not present here, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The ALJ must employ a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof on the first four steps. Butler v. Barnhart, 353 F.3d 992, 997 (D.C. Cir. 2004). The claimant must first show that she is not presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Second, she must show that she has a "severe medically determinable physical or mental impairment." Id. § 404.1520(a)(4)(ii). Third, she must show that her impairment meets or equals an impairment listed in the relevant regulation, 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. § 404.1520(a)(4)(iii). If so, the claimant is deemed disabled; if not, the ALJ must assess the claimant's residual function capacity ("RFC"), which reflects "what an individual can still do despite his or her limitations." Ross v. Astrue, 636 F. Supp. 2d 127, 132 (D.D.C. 2009). Fourth, the claimant must show that she is incapable of performing her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant has satisfied the first four steps, the Commissioner bears the burden at step five of demonstrating that the claimant is still able to perform "other work" based on a consideration of her RFC, age, education and work experience. Id. § 404.1520(a)(4)(v); see Butler, 353 F.3d at 997.

**B. Factual Background**

Callaway applied for disability benefits on February 16, 2011, alleging that her disability began on December 11, 2010 due to rheumatoid arthritis, Sjögren's syndrome, and hypothyroidism. See Administrative Record ("AR") [ECF Nos. 9-1 to 9-8] at 254–55, 266, 270. Callaway's claims were denied initially on June 2, 2011, and again upon reconsideration on November 18, 2011. AR 161, 172. Callaway filed a timely request for a hearing on December 1, 2011, AR 175, and the Social Security Administration ("SSA") held three hearings before an ALJ on March 8, 2012, September 26, 2012, and February 28, 2013, AR 40, 61, 140. On May 21, 2013, the ALJ denied Callaway's claim, finding she was not "disabled" under the Act. AR 35.

In performing the five-step evaluation process, the ALJ found (at steps one and two) that Callaway had not engaged in substantial gainful activity since the alleged disability onset date and that she had the following severe impairments: "rheumatoid arthritis, Sjogren's syndrome, disorders of the back, osteoarthritis of knees, headaches, obesity, fibromyalgia, and affective mood disorder." AR 24. At step three, the ALJ determined that Callaway did not have an impairment that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 25–27. And at step four, the ALJ found that Callaway was incapable of performing her past relevant work as a retail sales clerk, sales manager, or silent auction clerk. AR 33. Finally, after considering the entire record, the ALJ found that Callaway had the RFC to perform a range of sedentary work: she could occasionally lift or carry ten pounds; frequently lift or carry less than ten pounds; sit for a total of about six hours in an eight-hour workday; stand or walk about two hours in an eight-hour workday if allowed the option to change between sitting and standing for two minutes, once every half hour, at the workstation; frequently but not constantly engage in fine/gross manipulation; occasionally stoop, crouch, crawl, and kneel; and understand, remember, and carry out detailed but not complex tasks. AR 27. Relying on testimony from a vocational

expert, the ALJ determined that Callaway was capable of performing work in the national economy—for instance, as a personnel clerk, maintenance clerk, or freight shipment clerk—and hence that she was not disabled. AR 34–35. Callaway sought review of the ALJ's decision with the Appeals Council, which denied her request for review on August 29, 2014, making the ALJ's ruling the Commissioner's final decision. AR 6.[1]

Having exhausted her administrative remedies, Callaway filed this lawsuit seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).[2] This Court referred the case to a magistrate judge for full case management. See March 4, 2015 Referral Order [ECF No. 3]. Thereafter, Callaway filed a motion for judgment of reversal and the Commissioner moved for judgment of affirmance. Callaway alleged that the ALJ erred by: (1) failing to properly weigh the medical evidence and thereby failing to properly determine Callaway's RFC; (2) failing to properly evaluate Callaway's credibility; and (3) relying on flawed vocational expert ("VE") testimony. See Pl.'s Mot. for J. of Reversal at 16–26. The Commissioner responded that "the ALJ's decision is supported by substantial evidence and should be affirmed." Def.'s Mot. for J. of Affirmance [ECF No. 13] at 21.

In his April 29, 2016 Report and Recommendation, Judge Harvey recommended that the Court deny Callaway's motion and grant the Commissioner's motion. See Report & Recommendation ("R&R") [ECF No. 17] at 1, 37. Specifically, he found that the ALJ's RFC determination, credibility determination, and reliance on VE testimony were all supported by substantial evidence. Id. at 23–37. Callaway filed timely objections to the Report and

---

[1] At Callaway's request, the Appeals Council of the SSA extended the time within which she could file a civil action until March 10, 2015. AR 1.
[2] Callaway lived in Texas when her case was first adjudicated; however, she has since moved to Germany, giving this Court jurisdiction. See 42 U.S.C. § 405(g); Pls.' Mot. for J. of Reversal [ECF No. 12] at 2 n.3.

Recommendation on May 12, 2016, pursuant to Local Rule 72.3(b). See Pl.'s Objections to R&R [ECF No. 18]. The Commissioner responded, asking this Court to adopt the Report and Recommendation in full. See Def.'s Resp. to Pl.'s Objections [ECF No. 19] at 3.

## II. LEGAL STANDARD

A claimant may seek judicial review in a district court of "any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party." 42 U.S.C. § 405(g). The court must uphold any decision that "is based on substantial evidence in the record and correctly applies the relevant legal standards." Butler, 353 F.3d at 999; see Smith v. Bowen, 826 F.2d 1120, 1121 (D.C. Cir. 1987). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Butler, 353 F.3d at 999 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "requires more than a scintilla, but . . . less than a preponderance of the evidence." Id. (citation omitted).

The D.C. Circuit has recognized that "[s]ubstantial-evidence review is highly deferential to the agency fact-finder." Rossello ex rel. Rossello v. Astrue, 529 F.3d 1181, 1185 (D.C. Cir. 2008). The claimant bears the burden of demonstrating that the ALJ's decision was not based on substantial evidence or contained an error of law. Lane-Rauth v. Barnhart, 437 F. Supp. 2d 63, 64 (D.D.C. 2006). The reviewing court must determine whether the ALJ "has analyzed all of the evidence and has sufficiently explained the weight he has given to obviously probative exhibits." Id. at 65 (quoting Butler, 353 F.3d at 999). The court, however, "is not permitted to re-weigh the evidence and reach its own determination." Maynor v. Heckler, 597 F. Supp. 457, 460 (D.D.C. 1984); see Butler, 353 F.3d at 999 ("[W]e are not to determine ourselves whether [claimant] is disabled; we assess only whether the ALJ's finding . . . is based on substantial evidence and a correct application of the law").

"[A] district judge shall make a de novo determination of those portions of a magistrate judge's findings and recommendations to which objection is made." Local Civ. R. 72.3(c); accord 28 U.S.C. § 636(b)(1). A district judge is not required, however, to review those potions of a magistrate judge's report to which no objection is made. Porter v. Colvin, 951 F. Supp. 2d 125, 129 (D.D.C. 2013); Miller v. Holzmann, No. 95-1231 (RCL), 2007 WL 710132, at *1 (D.D.C. Mar. 6, 2007). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(c).

### III.   DISCUSSION

In a thorough, thoughtful Report and Recommendation, Judge Harvey made three recommendations regarding the ALJ's decision. He first recommended upholding the ALJ's credibility determination with respect to Callaway, because that determination was based on substantial evidence. See R&R at 29. He next recommended upholding the ALJ's RFC determination because the ALJ's decision to assign "some but not controlling weight" to Callaway's treating physicians' opinions was supported by substantial evidence. Id. at 34. Finally, he recommended upholding the ALJ's reliance on the VE's testimony. Id. at 37. Callaway raises objections to each of these recommendations. She first argues that the ALJ failed to properly weigh opinions offered by her treating physicians, Drs. Gonzalez-Fuentes and Kapoor, which the ALJ found both to be based on Callaway's subjective reporting and to conflict with one another and with the other medical evidence. Pl.'s Objections to R&R at 2–5. She next contends that the ALJ did not provide a legally sufficient reason for discounting Callaway's statements about the intensity, persistence, and limiting effects of her impairments. Id. at 5–7. Finally, she asserts that the ALJ erroneously relied on VE testimony regarding jobs that include a sit/stand option because the testimony conflicted with statements in the Dictionary of Occupational Titles ("DOT"). Id. at

6

7–9. The Court addresses each objection below, concluding, as Magistrate Judge Harvey did, that the ALJ's determinations were supported by substantial evidence and free of legal error.

### A. The Medical Opinions of Doctors Gonzalez-Fuentes and Kapoor

Callaway's first objection is that the ALJ failed to properly weigh the opinion evidence of her treating physicians, Drs. Gonzalez-Fuentes and Kapoor. See id. at 2–5. Callaway contends that the doctors' opinions are based on appropriate testing and are not contradicted by substantial evidence in the record, and that they therefore should have received controlling weight under applicable regulations. See id. at 4 (citing 20 C.F.R. § 404.1527(c)(2)). Even if not granted controlling weight, Callaway contends that the ALJ did not provide any reasons supported by the record to accord them "only some weight." Id. at 4–5. Callaway also argues that Judge Harvey relied on post hoc rationalizations to affirm the ALJ's RFC finding, since the ALJ did not cite any evidence for his finding. The Court agrees with Judge Harvey that the ALJ's findings are supported by substantial evidence in the record.

After thoroughly reviewing the record, the Court finds that there is substantial evidence to support the ALJ's decision to give the opinions of Callaway's treating physicians "some" but not controlling or "the greatest" weight. Contra id. at 4 (quoting Social Security Ruling ("SSR") 96–2p, 1996 WL 374188, at *4 (SSA July 2, 1996)). While treating physicians' opinions must be given "substantial" weight, ALJs need not treat them as controlling if they are contradicted by substantial evidence and the ALJ explains why she is not following them. See Jones v. Astrue, 647 F.3d 350, 355 (D.C. Cir. 2011); Williams v. Shalala, 997 F.2d 1494, 1498 (D.C. Cir. 1993). As the ALJ laid out, see AR 30–31, Dr. Kapoor and Dr. Gonzalez-Fuentes provided divergent responses to questions relevant to determining RFC. Dr. Gonzalez-Fuentes rated Callaway's condition as significantly worse than did Dr. Kapoor on several dimensions, including the level of

7

stress Callaway could handle ("low" versus "moderate"), how often and for how long Callaway would need to move around during a workday (10 minutes every 30–60 minutes versus 5–10 minutes every hour), and how often Callaway would have to miss work (more than 3 times monthly versus 2–3 times monthly). AR 440–42, 482–84.[3] The ALJ also noted that their answers to "subjective matters such as how often [Callaway] would need to miss work" relied on Callaway's "not entirely credible" reporting—a determination for which the ALJ had substantial evidence. AR 28, 30, 33; see infra Part III.B. Finally, the ALJ noted several times that the objective medical evidence did not support a finding of disability: Callaway's physical examinations reflected no functional loss, end organ damage, inflammation, or gait abnormalities, AR 29–32, and certain treatments—both medication, AR 28–29, and caudal epidural steroid injections, AR 31—significantly improved Callaway's condition on at least a temporary basis. There is thus substantial evidence that contradicts the medical bases for Dr. Kapoor's and Dr. Gonzales-Fuentes's RFC estimates. After reviewing the record, the Court agrees with and adopts Judge Harvey's thorough discussion of the evidentiary and legal basis for the ALJ's decision not to give controlling weight to Callaway's treating physicians' opinions.

Callaway also claims that the ALJ failed to cite any evidence for his ultimate RFC finding, and that Judge Harvey erroneously engaged in post hoc rationalization by determining that the RFC was plainly derived from the opinion of a medical consultant. Pl.'s Objections to R&R at 5. This objection does not warrant reversal, for two reasons. First, a review of the record clearly reveals that the ALJ's RFC determination was derived from the opinions of Dr. Sterling Moore, a

---

[3] Though the ALJ only discussed Kapoor's answers to these questions, the record reflects that Gonzalez-Fuentes and Kapoor also greatly diverged in their assessments of the frequency of Callaway's pain ("daily" versus "1–2x/ month"), AR 439, 481, and of how long Callaway could sit or stand each workday (5 hours sitting, 2 hours standing/walking versus 1 hour at a time sitting, 0–1 hour standing/walking), AR 440, 482.

rheumatologist called as a State medical expert. The ALJ's functional findings all tracked Dr. Moore's testimony, taking the lower-capacity end of any range Dr. Moore provided. Compare AR 86 (statement of Dr. Moore) (opining that Callaway could lift and carry 10 pounds maximum and less than 10 pounds frequently, could walk for 2–4 hours per workday, could sit for 6 hours per workday, would need to change positions for 1-2 minutes every half hour; could not use ropes, ladders, or scaffolds, but could occasionally engage in other postural activities; and could engage in frequent gross or fine manipulation), with AR 27 (opinion of ALJ) (finding that Callaway could lift and carry 10 pounds occasionally and less than 10 pounds frequently; could stand or walk for 2 hours in a workday; could sit for 6 hours in a workday; would need to change positions for 2 minutes every half hour; could occasionally stoop, crouch, crawl, or kneel; and could engage in frequent but not constant gross or fine manipulation).

Callaway claims that the Court cannot rely on the obvious similarity between Dr. Moore's RFC determination and the ALJ's because "the ALJ did not say" that it relied on Dr. Moore's testimony. Pl.'s Objections to R&R at 5 (quoting Jones, 647 F.3d at 356). Callaway quotes Jones somewhat out of context: Jones was discussing what evidence is required to reject a treating physician's opinion, not the evidence the ALJ then needs to put forward for his RFC determination once he has shown why he has not followed the treating physician. See 647 F.3d at 356 ("The treating physician rule requires an explanation by the SSA, not the court." (emphasis added)). Regardless, the connection between Dr. Moore's estimates and the ALJ's own are plain enough that little would be gained by remanding to the ALJ. Unlike in other cases in which the ALJ did not explain why it was rejecting the treating physician's opinion, see, e.g., id., or in which it erroneously assigned weight to certain medical opinions, see, e.g., Porter, 951 F. Supp. 2d at 133, in this case the failure to explicitly discuss Dr. Moore's testimony was at most a "technical failing"

9

whose correction would not lead the ALJ to reevaluate his findings, id. Under such circumstances, remand is merely a recipe for inefficiency rather than an opportunity for reconsideration. Cf. id. at 137 (finding that correction of an error that influenced an ALJ's RFC finding "could very well lead to a different result," and that therefore "prejudice does potentially lie").

Second, the ALJ had sufficient evidence for his findings even among the facts directly cited in his decision. While the ALJ did not cite a medical opinion that laid out the exact RFC at which he arrived, "sufficient information has been provided for the Court to understand [his] reasoning." Grant v. Astrue, 857 F. Supp. 2d 146, 154 (D.D.C. 2012). Unlike in Jones, 647 F.3d at 356–57, and Butler, 353 F.3d at 1002, the ALJ here noted the contradictory evidence in the record that tended to undermine the treating physicians' (and Callaway's own) pessimistic views of Callaway's capacity. And indeed, the sitting and walking capabilities that the ALJ attributed to Callaway look rather like Dr. Kapoor's estimates, adjusted upward because of the more positive medical record and Dr. Kapoor's statement that Callaway was "a very high functioning lady who is capable of doing work during her disease-free days." AR 442. Both Dr. Kapoor and the ALJ found that Callaway could stand or walk for two hours in an eight-hour workday, and the ALJ found that Callaway could sit for six hours a day as compared to Dr. Kapoor's five hours. AR 27, 440. The ALJ found that Callaway would need a sit/stand option for two minutes every half hour, or a total of four minutes per hour—slightly below the low end of Dr. Kapoor's estimate that five to ten minutes per hour would be necessary. AR 27, 440. The ALJ cited the mostly normal medical evidence in the record, and gave weight to the views of experts whose findings were consistent with that objective medical evidence—all of which counsels for a more optimistic RFC than those estimated by Callaway's treating physicians. AR 26–33. Hence, the ALJ met the SSA's narrative

10

discussion requirements for ALJ RFC determinations,[4] and provided substantial evidence for a sedentary but non-disabled RFC.

### B. **Credibility of Callaway's Statements**

Callaway next argues that the ALJ erred by assigning "little probative weight" to her statements about the severity of her impairments. AR 33. She asserts that the ALJ made "a conclusory finding that the objective evidence was insufficient to support Ms. Callaway's statements," and that the evidence cited did not render her statements incredible. Pl.'s Objections to R&R at 6–7. "The credibility determination is solely within the realm of the ALJ. A reviewing court will only intercede where an ALJ fails to articulate a rational explanation for his or her finding." Grant, 857 F. Supp. 2d at 156. Moreover, "[t]he ALJ must only include a claimant's 'credibly established limitations' in the RFC assessment." Troy v. Colvin, 266 F. Supp. 3d 288, 295 (D.D.C. 2017) (quoting Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005)). After reviewing the record, the Court finds that the ALJ correctly applied the relevant legal standards, and that substantial evidence supports his credibility determination.

The governing regulations prescribe a two-step process to determine whether a claimant's symptoms affect her ability to perform basic work activities. 20 C.F.R. § 404.1529. First, the claimant must present "medical signs or laboratory findings" evidencing a "medically determinable impairment that could reasonably be expected to produce" the alleged pain. Id. § 404.1529(a)–(b). The ALJ found that Callaway satisfied step one because her "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 28.

---

[4] See SSR 96–8p, 1996 WL 374184, at *7 (SSA July 2, 1996) (stating that the ultimate RFC determination must: include a "narrative discussion describing how the evidence supports" the ALJ's conclusions, "discuss the individual's ability to perform sustained work activities," "describe the maximum amount of each work-related activity the individual can perform," and "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved").

Second, the ALJ must assess the persistence and intensity of pain and the extent to which it impairs a claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). This step requires the ALJ to evaluate the claimant's statements as well as "all [of] the available evidence," including the "claimant's medical history, medical signs and laboratory findings; objective medical evidence of pain; the medical opinions of the claimant's treating physician[s]; and any other evidence that bears on the severity of the pain."[5] Butler, 353 F.3d at 1004 (citing 20 C.F.R. § 404.1529(c)(1)–(3)). Because pain is subjective, the ALJ evaluates the claimant's statements "in relation to the objective medical evidence and other evidence," including "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." Id. at 1004 (quoting 20 C.F.R. § 404.1529(c)(4)). The ALJ may not reject a claimant's statements solely because they are not substantiated by objective medical evidence; rather, he "must consider the entire case record," Barnhart, 353 F.3d at 1005 (quoting SSR 96–7p, 1996 WL 374186, at *1 (SSA July 2, 1996)[6]), and will take account of the claimant's statements to the extent that they "can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. § 404.1529(c)(3).

Callaway's objection fails on both an evidentiary and a legal basis. To begin with, Callaway does not identify any subjective complaints that the ALJ allegedly rejected for lack of corroborating evidence. See Pl.'s Objections to R&R at 6–7. Rather, she takes issue with the

---

[5] Factors relevant to a claimant's symptoms include: the claimant's daily activities; the "location, duration, frequency, and intensity of" the claimant's pain; "[p]recipitating and aggravating factors"; "[t]he type, dosage, effectiveness, and side effects of any medication" for pain relief; treatment the claimant receives or has received for pain relief; "[a]ny measures" the claimant uses to relieve pain; and "[o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain." 20 C.F.R. § 404.1529(c)(3).

[6] This ruling has been superseded by Social Security Ruling 16–3p, effective March 28, 2016. 2016 WL 1119029 (SSA Mar. 16, 2016); see also 2016 WL 1237954 (correcting effective date). The new ruling does not apply retroactively to claims, like Callaway's, that were filed before its effective date. Ali v. Colvin, 236 F. Supp. 3d 86, 95 n.1 (D.D.C. 2017).

sufficiency of the evidence that the ALJ did cite in finding her statements not fully credible. Id. But as Judge Harvey ably laid out, R&R at 26–27, the ALJ acknowledged Callaway's complaints, proceeding chronologically through the medical evidence and comparing Callaway's subjective reports at each examination with the evidence found during that examination, AR 27–33. And by limiting Callaway to sedentary work with further restrictions on standing, sitting, carrying, and postural exertions, it is clear that the ALJ considered Callaway's statements and recognized that she had significant (but not extreme or disabling) work-related restrictions resulting from her impairments. See AR 27, 33; see also AR 34 ("[T]he claimant's additional limitations do not allow the claimant to perform the full range of sedentary work . . . .").

Moreover, the ALJ properly applied the law in making his credibility determination. The ALJ began by stating the correct legal standard. AR 27. He then properly applied that standard and articulated the specific reasons that he found that Callaway's statements were "not entirely credible." AR 28, 33. The ALJ did not make this credibility determination by asking whether there was objective corroborating evidence for Callaway's claims of pain. Rather, he showed that Callaway's "alleged functional limitations and restrictions due to . . . pain [could not] reasonably be accepted as consistent with the objective medical evidence and other evidence," and did so in a manner "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to [Callaway's] statements and reasons for that weight." Butler, 353 F.3d at 1005 (citations omitted). The ALJ evaluated all of the evidence in the record, including Callaway's statements about her functional limitations to the Commissioner and to her treating doctors, the objective medical evidence, opinions from Callaway's treating doctors, opinions from state medical examiners, and Callaway's hearing testimony. AR 27–33. The ALJ then concluded that Callaway's statements regarding the intensity and duration of symptoms were inconsistent

13

with "medical record signs, laboratory findings, [and] the medical record as a whole," and that her "allegations of experiencing disabling pain and limitation, made under oath, are not corroborated in the overall record." AR 33. Judge Harvey thoroughly explained the evidence that the ALJ laid out in his opinion, and correctly determined that (1) the objective evidence showing no functional loss, (2) the opinions of Callaway's treating and consulting physicians, (3) Callaway's inconsistent statements about the intensity and duration of her pain, (4) Callaway's claims that she could engage in many activities of daily life, and (5) the evidence regarding the effects of treatment together provided substantial evidence for the ALJ's decision to "consider[] but grant[] little probative weight" to Callaway's testimony. AR 33; see R&R at 26–29. While Callaway contests the sufficiency of several pieces of evidence the ALJ cited, see Pl.'s Objections to R&R at 6–7, it is not this Court's job to second-guess the ALJ by reweighing the evidence, see Maynor, 597 F. Supp. at 460. Hence, in full agreement with Judge Harvey, the Court finds no basis to overturn the ALJ's credibility determination.

### C. The Vocational Expert's Testimony

Finally, Callaway contends that the ALJ erred in relying on the VE's testimony regarding occupations that allow a sit/stand option, because the DOT does not permit a sit/stand option. Pl.'s Objections to R&R at 7. An ALJ may rely on VE testimony to determine whether a claimant's work skills and RFC allow the claimant to perform work in the national economy. See 20 C.F.R. § 404.1566(e). Indeed, the ALJ is encouraged to consult with a VE "[i]n cases of unusual limitation of ability to sit or stand." SSR 83–12, 1983 WL 31253, at *4 (SSA Jan. 1, 1983). Then, if "there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000

WL 1898704, at *2 (SSA Dec. 4, 2000); see Callahan v. Astrue, 786 F. Supp. 2d 87, 94 (D.D.C. 2011). Here, however, the DOT is silent as to whether the occupations listed by the VE include a sit/stand option. See DOT 209.362-026 (4th ed. 1991) (personnel clerk); DOT 239.367-014 (maintenance clerk); DOT 209.367-042 (reconsignment clerk[7]); AR 50. Thus, "[t]here is no conflict" for the ALJ to resolve. Dewey v. Colvin, 650 F. App'x 512, 514 (9th Cir. 2016); accord Forrest v. Comm'r of Soc. Sec., 591 F. App'x 359, 364 (6th Cir. 2014); Zblewski v. Astrue, 302 F. App'x 488, 494 (7th Cir. 2008). The VE testified that her testimony conformed to the DOT, AR 51, and no further inquiry was required.[8]

Moreover, review of the hearing transcript shows that the ALJ and VE were not contemplating an at-will sit/stand option within the meaning of SSR 83–12. That SSR recognized that some claimants may need to "alternate periods of sitting and standing," such that they require an occupation in which they can "sit or stand at will." SSR 83–12, 1983 WL 31253, at *4. However, it differentiates between these more extreme conditions and situations in which claimants can make their needed adjustments in the course of their work or during short breaks. See id.; see also id. ("In cases of unusual limitation of ability to sit or stand, a [VE] should be

---

[7] Both the VE and the ALJ referred to this occupation as "freight shipment clerk." AR 34, 50. Despite the official name, "freight shipment clerk" does accurately describe the position, and the VE identified the correct DOT code. See DOT 209.367-042 ("Reroutes freight shipments to new destinations following request from shipper: Receives request from shipper for reconsignment or change in destination of freight shipment.").

[8] Callaway cites Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), to argue that "an ALJ must independently identify conflicts by comparing the express language of the DOT to the VE's testimony, and if there seems to be a conflict, the ALJ must obtain a reasonable explanation for the conflict." Pl.'s Objections to R&R at 8. Pearson does indeed read SSR 00–4p to require the ALJ to affirmatively identify apparent conflicts. See 810 F.3d at 208–09. However, the circuits are split as to whether an ALJ must examine potential conflicts if neither the VE nor claimant's counsel identify one during administrative hearings, and the D.C. Circuit has not weighed in on the issue. See Carpenter v. Colvin, No. 113CV01637CKKGMH, 2016 WL 946975, at *6–7 (D.D.C. Feb. 24, 2016), report and recommendation adopted, No. CV1301637CKKGMH, 2016 WL 953216 (D.D.C. Mar. 14, 2016). Regardless, the Pearson rule only requires the ALJ to "identify where the expert's testimony seems to, but does not necessarily, conflict with the" DOT. 810 F.3d at 209. Here, the VE's testimony does not meet this threshold, because the DOT simply does not mention the availability, or lack thereof, of a sit/stand option. Cf. id. at 210 (finding apparent conflict where ALJ determined that claimant could only occasionally reach upward but DOT descriptions of occupations VE claimed he could perform all explicitly required frequent reaching).

consulted to clarify the implications for the occupational base." (emphasis added)). The ALJ here clearly indicated to the VE that he was referring to the latter circumstance, stating that his hypothetical would "allow the option to change positions at the work station from sitting to standing or standing to sitting for two minutes once every half hour." AR 49. It was on this basis that the VE testified that Callaway could perform at least three jobs in the national economy. AR 50. There is no requirement that the ALJ inquire about a conflict if there is no conflict about which to inquire. See Brown v. Barnhart, 408 F. Supp. 2d 28, 36 (D.D.C. 2006). Hence, the ALJ properly relied on the VE's testimony in determining that Callaway could find work. AR 34.

## **CONCLUSION**

For the reasons explained above, the Court rejects Callaway's three objections and adopts Magistrate Judge Harvey's thorough Report and Recommendation. Accordingly, the Court will deny Callaway's motion for judgment of reversal and grant the Commissioner's motion for judgment of affirmance. A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: February 16, 2018